IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KARMEN BANKSTON, et al. | : | CASE NO. 3:13-CV-248 |
| Plaintiffs, | : | (Judge Thomas M. Rose) |
| | | (Magistrate Judge Michael R. Merz) |
| v. | : | |
| STANLEY L. ALEXANDER, M.D., et al. | : | **MEMORANDUM IN OPPOSITION TO OHIO ATTORNEY GENERAL'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF ON BEHALF OF THE OHIO DEPARTMENT OF MEDICAID** |
| Defendants. | : | |
| | : | |
| | : | |

**I.  INTRODUCTION**

On September 27, 2013, the Ohio Attorney General ("OAG") filed its Motion for Leave to File Amicus Curiae Brief on Behalf of the Ohio Department of Medicaid (Doc. # 16). The OAG attached a copy of the proposed Brief to its Motion. As explained more fully herein, the Defendants do not dispute the provisions of Federal and State law cited by the OAG in the proposed Brief. Because the Defendants are in agreement as to the controlling provisions of State and Federal law, the proposed Brief would not aid in the advancement of this litigation. For the reasons contained herein, the Defendants request that this Court deny the OAG's Motion.

1

## II. FACTS

During the period in question, the Defendants Stanley L. Alexander, M.D. and Kenneth D. Christman, M.D. rendered medical services at various hospitals, including Children's Medical Center of Dayton. The Defendants rendered non-emergency plastic surgery services, consisting of suturing wounds that resulted from various causes. At no point during the period in question did the Defendants have contracts with the Ohio Department of Job and Family Services ("ODJFS"), the Ohio Department of Medicaid ("ODM"), or with CareSource. Prior to performing medical services, the Defendants had their patients, or their patients' guardians, knowingly acknowledge that the Defendants did not accept medicaid patients, and that the patients were responsible for costs incurred for the medical services rendered.

## III. LAW & ARGUMENT

### A. The Defendants did not provide emergency services as defined by Federal and State law, and therefore are not required to abide by Medicaid billing-caps.

As discussed previously, the Defendants do not dispute the provisions of Federal and State law requiring providers of emergency services to accept the lesser amount of the amount billed or one hundred per cent of the Ohio medicaid fee-for-service reimbursement rate as payment in full. However, the Defendants dispute that they provided emergency services to the patients at issue in this litigation.

A managed care plan non-contracting provider of emergency services is defined as:

> [A]ny person, institution, or entity who does not contract with the MCP but provides emergency services to an MCP member, regardless of whether or not that provider has a medicaid provider agreement with ODM.

OAC Ann. § 5101:3-26-11(A)(2).

"Emergency services" means "covered inpatient services, outpatient services, or medical transportation that are provided by a qualified provider and are needed to evaluate, treat, or stabilize an emergency medical condition as defined in paragraph (W) of this rule." OAC Ann. § 5101:3-26-01(X); see also 42 U.S.C. § 1396u-2(B). Paragraph (W) defines "Emergency medical condition" as:

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson, who possesses average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in any of the following: placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy; serious impairment to bodily functions; or serious dysfunction of any bodily organ or part.

OAC Ann. § 5101:3-26-01(W); *see also* 42 U.S.C. § 1396u-2(C).

A MCP non-contracting provider of emergency services "must accept as payment in full from the MCP the lesser of billed charges or one hundred per cent of the Ohio medicaid program fee-for-service reimbursement rate in effect for the date of service." OAC Ann. § 5101:3-26-11(B); *see also* 42 U.S.C. § 1396u-2(D).

The Defendants did not provide emergency services as defined under Federal or State law because the services the Defendants rendered were not necessary to evaluate, treat, or stabilize an emergency medical condition. The patients in question were already diagnosed, treated, and stabilized for their underlying injuries prior to receiving the services of the Defendants. Moreover, the absence of the services rendered would not have placed the health of the patients in serious jeopardy, would not have resulted in the serious impairment of their bodily functions, nor would it have resulted in serious dysfunction of any of their bodily organs or parts.

Instead, the Defendants were selected to provide medical services because of their skill and expertise in plastic surgery and in suturing individuals in a manner that would minimize scarring.

Any emergency room surgeon at the hospitals in question could have satisfactorily sutured the patients' wounds within the degree of care and skill required within the medical profession. Thus, the Defendants were chosen for aesthetic considerations rather than for the provision of emergency services. In fact, the Defendants were chosen by the patients, or their guardians, even after being advised that the Defendants would bill the patients for their services.

Finally, any argument that some or all of the services rendered by the Defendants were emergency services will necessarily require an in-depth factual inquiry into each particular circumstance. This inquiry will have to be performed for each and every Plaintiff of the alleged class to determine whether they received "emergency services" as defined under Federal and State law. The Defendants are not disputing the language of the Federal and State laws cited by the OAG, but instead are challenging whether they provided "emergency services" so as to be prohibited from billing patients directly for their services.

### B. The Defendants billing of patients for non-emergency services was proper, as the Defendants do not fall within the definition of a non-contracting provider of medical services.

The OAG asserts that section 5101:3-26-11(E) of the Ohio Administrative Code when read in conjunction with Federal law does not permit billing patients of medicaid for emergency services rendered. The Defendants do not dispute that section 5101:3-26-11(E) only permits MCP non-contracting providers to bill patients for non-emergency services. Again, the Defendants contend that the services they provided were not emergency services, but instead were non-emergency services.

The Defendants are not subject to section 5101:3-26-11(E) for non-emergency services rendered. Section 5101:3-26-11(E) prohibits "MCP non-contracting providers" from billing an MCP member for non-emergency services unless a list of conditions are met. Therefore, as

4

threshold matter the Defendants must be defined as "MCP non-contracting providers" before section 5101:3-26-11(E) would apply. An "MCP non-contracting provider" is defined as "any provider with a medicaid provider agreement with ODM who does not contract with the MCP but delivers health care services to that MCP's members…" The Defendants never entered into a medicaid provider agreement with either the ODM or its predecessor the ODJFS. Consequently, the Defendants are not "MCP non-contracting providers" and do not have to adhere to the requirements of section 5101:3-26-11(E) before billing patients for non-emergency services.

## IV. CONCLUSION

The Defendants do not dispute the provisions of Federal and State cited by the OAG as prohibiting the billing of patients for emergency services, nor do the Defendants contend that the Ohio Administrative Code permits the billing of patients for emergency services under section 5101:3-26-11(E). Instead, the Defendants assert that they billed patients for non-emergency services, and that they do not need to comply with section 5101:3-26-11(E) when billing for non-emergency services because they are not MCP non-contracting providers. Because, the Defendants do not dispute the legal authority or contentions contained within the proposed Amicus Curiae Brief, the Brief would do little to advance this litigation. This Court should deny the Ohio Attorney General's Motion for Leave to File Amicus Curiac Brief on Behalf of the Ohio Department of Medicaid.

Respectfully submitted,

*/s/ David C. Greer*
David C. Greer (0009090)
BIESER, GREER & LANDIS, LLP
400 PNC Center
6 North Main Street
Dayton, OH 45404-1098
Ph: (937) 223-3277
Fx: (937) 223-6339
E-Mail: dcg@bgllaw.com
*Attorneys Defendants Stanley L. Alexander, M.D.,
Kenneth D. Christman, M.D., and Fountain Skin Care
Cosmetic Plastic and Reconstructive Surgery, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on the **15th** day of **October, 2013** a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing document was electronically mailed to all parties of record:

**Lawrence Joseph Greger**
Greger Law Office
120 W. Second Street
Suite 1100
Dayton, OH 45402
937-223-3153
Email: LGreger912@aol.com
Attorney for Plaintiffs Bankston et. al.

**Ara Mekhjian**
Ohio Attorney General's Office
30 East Broad Street
26th Floor
Columbus, OH 43215
614-644-8993
Fax: 614-466-6090
Email: ara.mekhjian@ohioattorneygeneral.gov
Amicus Curiae for Ohio Dept. of Medicaid

**Gregory D. Brunton**
Reminger Co., L.P.A. - 2
65 East State Street
4th Floor
Columbus, OH 43215
614-228-1311
Fax: 614-232-2410
Email: gbrunton@reminger.com
Attorney for Defendant Steven C. Katchman

*/s/ David C. Greer*
DAVID C. GREER

9998.213185.\ 422547.1

6